The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 23, 2026

## 2026 COA 62

**No. 25CA1663, *Verheggen v. Adams County Department of Human Services* — Labor and Industry — Colorado Equal Pay for Equal Work Act — Wage Discrimination Prohibited; Government — Colorado Anti-Discrimination Act — Discriminatory or Unfair Employment Practices**

A division of the court of appeals concludes that an employee is not required to make allegations relating to gender discrimination to state a claim for relief under either section 8-5-102(2)(d), C.R.S. 2025, of Colorado's Equal Pay for Equal Work Act or section 24-34-402(1)(i), C.R.S. 2025, of the Colorado Anti-discrimination Act — both of which prohibit an employer from retaliating against an employee for discussing or disclosing the employee's wages.

Court of Appeals No. 25CA1663
Adams County District Court No. 23CV30482
Honorable Toni J. Wehman, Judge

Emily Camp Verheggen,

Plaintiff-Appellant,

v.

Adams County Department of Human Services, Katie McDougal, Kari Daggett,
and Sabrina Burbidge,

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE LUM
Welling and Schock, JJ., concur

Announced July 23, 2026

HKM Employment Attorneys LLP, Adam M. Harrison, Hayden G. DePorter,
Denver, Colorado, for Plaintiff-Appellant

Heidi Miller, County Attorney, Michael A. Sink, Assistant County Attorney,
Brighton, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Emily Camp Verheggen, appeals the district court's judgment dismissing her complaint against defendants, the Adams County Department of Human Services (ACDHS); Katie McDougal (in her capacity as the ACDHS director); Kari Daggett (individually); and Sabrina Burbidge (individually), under C.R.C.P. 12(b)(5) for failure to state a claim for which relief can be granted.

¶ 2     This appeal presents an issue of first impression: whether under section 8-5-102(2)(d), C.R.S. 2025, of Colorado's Equal Pay for Equal Work Act (EPEWA) or section 24-34-402(1)(i), C.R.S. 2025, of the Colorado Anti-discrimination Act (CADA)[1] — which both prohibit employers from retaliating against employees for discussing or disclosing their wages — an employee is required to make allegations relating to gender discrimination to state a claim for relief.  We conclude that neither statute contains such a requirement and that the district court erred by dismissing Verheggen's complaint on that basis.

---

[1] Throughout the proceedings below and the appellate briefing, both parties refer to section 24-32-402, C.R.S. 2025, as the "Wage Transparency Act."  Because that section is part of CADA, we refer to it as such in this opinion.

¶ 3 Because we conclude that Verheggen didn't sufficiently allege that two of the defendants (Daggett and Burbidge) were "employers" under the EPEWA, we nevertheless affirm the district court's dismissal of the claims against them. However, we reject the defendants' arguments to affirm the dismissal as to the ACDHS and McDougal on other grounds. Thus, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

¶ 4 We take the following facts from Verheggen's complaint. Verheggen was employed by the ACDHS[2] in the Child and Family Services Division. In 2004, after working for several years as a caseworker, she was promoted to an intake supervisor position, which required her to work seventy-six hours every eight days. However, Verheggen was only paid for forty hours of work per week. Shortly after her promotion, Verheggen asked her manager and a human resources representative for an explanation as to why the new position required her to work extended hours without

---

[2] Verheggen's complaint also refers to this party as the Adams County Department of Social Services. We refer to the entity as the ACDHS in this opinion.

additional pay. Verheggen was told this was part of her job duties, and she continued to work this schedule for several years. From 2013 to 2015, Verheggen's schedule decreased to forty hours per week before returning to the seventy-six-hour-per-eight-days schedule. In 2021, Verheggen met with an outside agency to discuss her schedule and work duties. Shortly afterward, a human resources representative told Verheggen that she would look into whether Verheggen may be entitled to overtime compensation.

¶ 5 Verheggen's schedule eventually returned to forty hours per week, but her concerns about her previously earned pay weren't resolved. In December 2022, Verheggen, through her attorney, sent a wage demand letter to the ACDHS, care of McDougal. The demand letter requested $745,461.39 in back pay. Verheggen didn't receive any of the requested pay.

¶ 6 In April 2023, Verheggen filed her first complaint in this case (initial complaint), naming the Adams County Board of Commissioners (the Board) as the only defendant. She alleged that the Board "deliberately failed and refused to pay [her] for her earned wages for all hours that she worked at the County's specific direction."

¶ 7     In June 2023, about two months after she filed the initial complaint, Verheggen received a "Written Reprimand and Two-Day Suspension Without Pay" (suspension), asserting that she had "demonstrated unprofessional and disrespectful behavior that . . . negatively impacted team members, [her] peers, and County partners."  The ACDHS later "rescinded" the suspension but only after it had "escorted [Verheggen] out of the office, prevented her from working, and withheld her pay."

¶ 8     Verheggen later filed two amended complaints.  The operative complaint names the ACDHS, McDougal, Daggett (the deputy director of the ACDHS), and Burbidge (Verheggen's supervisor) as defendants (but not the Board).  As relevant here, Verheggen's operative complaint alleged that the defendants violated the EPEWA and CADA by suspending her in retaliation for sending the demand letter and filing the initial complaint.  (Verheggen asserted the EPEWA claim against all defendants but asserted the CADA claim only against the ACDHS.)

¶ 9     The defendants filed a motion to dismiss, arguing that Verheggen failed to state claims under the EPEWA and CADA.  The district court interpreted the EPEWA and CADA to pertain only to

complaints that contain allegations related to gender discrimination because the statutes "were enacted specifically to address systemic gender-based disparities in compensation." And because Verheggen didn't allege that she suffered gender discrimination or that she suffered an adverse employment action in retaliation for raising concerns about gender-based pay disparities, the district court dismissed her claims under C.R.C.P. 12(b)(5).[3]

## II. Standard of Review and Applicable Law

¶ 10 "We review a C.R.C.P. 12(b)(5) motion to dismiss de novo and apply the same standards as the [district] court." *Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7.

¶ 11 In evaluating a motion to dismiss under Rule 12(b)(5), we may consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference, and documents referred to in the complaint that are central to the plaintiff's claim. *Norton*, ¶ 7; *Titan Indem. Co. v. Travelers Prop. Cas. Co. of Am.*, 181 P.3d 303,

---

[3] The district court also dismissed Verheggen's four other claims under different rationales. Verheggen doesn't appeal the dismissal of those claims.

306 (Colo. App. 2007).  We view the facts alleged as true and in the light most favorable to the plaintiff.  *Norton*, ¶ 7.

¶ 12    To survive a motion to dismiss under C.R.C.P. 12(b)(5), the complaint must plead sufficient facts to state a claim for relief that is plausible on its face.  *See Warne v. Hall*, 2016 CO 50, ¶¶ 7, 9.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    No Requirement to Allege Gender Discrimination

¶ 13    Verheggen contends that the district court erred by construing the EPEWA and CADA to require allegations related to gender discrimination when bringing a claim for retaliation.  We agree.

¶ 14    We review de novo a district court's statutory interpretation.  *Cisneros v. Elder*, 2022 CO 13M, ¶ 21.  We construe statutes to give effect to the legislature's intent.  *Allman v. People*, 2019 CO 78, ¶ 12.  In doing so, we first look to the statute's text, giving words and phrases their plain and ordinary meanings.  *Id.* at ¶ 13.  We read the statute as a whole and in the context of the statutory scheme, "giving consistent, harmonious, and sensible effect to all of

6

the statute's language." *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15. If we determine that a statute is unambiguous, we enforce it as written and do not resort to other rules of statutory construction. *Id.*

### A. EPEWA

¶ 15    The EPEWA, section 8-5-102(1), provides,

> An employer shall not discriminate between employees on the basis of sex, or on the basis of sex in combination with another protected status . . . by paying an employee of one sex a wage rate less than the rate paid to an employee of a different sex for substantially similar work, regardless of job title, based on a composite of skill[,] effort, . . . and responsibility . . . .

¶ 16    Meanwhile, section 8-5-102(2)(d) provides, "An employer shall not . . . [d]ischarge, discipline, discriminate against, coerce, intimidate, threaten, or interfere with an employee or other person because the employee or person inquired about, disclosed, compared, or otherwise discussed the employee's wage rate." § 8-5-102(2)(d). (We refer to the adverse employment actions described in subsection (2)(d) collectively as "retaliation.")

¶ 17    A person "aggrieved by a violation of section 8-5-102 may commence a civil action in district court no later than two years after the violation occurs." § 8-5-103(2), C.R.S. 2025.

¶ 18    The language of section 8-5-102 unambiguously prohibits an employer from taking multiple distinct types of actions. Subsection (1) says that an employer shall not "discriminate between employees on the basis of sex" by paying an employee of one sex a wage rate less than the rate paid to an employee of a different sex for substantially similar work. § 8-5-102(1). And subsection (2)(d) says that an employer shall not retaliate against an employee for discussing or disclosing the employee's wage rate. § 8-5-102(2)(d). Nothing in subsection (2)(d) — or in the rest of subsection (2) — refers to discrimination based on gender or requires that the discussion or disclosure of the employee's wage rate must pertain to gender-based pay disparities.

¶ 19    Further, nothing in the statutory scheme suggests that an employer must violate *both* subsection (1) and subsection (2) for the employee to bring a claim for retaliation. Indeed, other statutory provisions contemplate that an employer can be held liable for violating *either* subsection — and that different damages may be

available depending upon which section is violated. *See*
§ 8-5-104(1), C.R.S. 2025 (describing damages available when an
employer violates subsection (1)); § 8-5-104(2) (describing damages
available when an employer "violates *any provision* of section
8-5-102" (emphasis added)).

¶ 20 Based on the statute's plain language, we conclude Verheggen
isn't required to allege facts related to gender discrimination to
bring a retaliation claim under section 8-5-102(2)(d), and the
district court erred by dismissing her claim for that reason.

## B. CADA

¶ 21 CADA authorizes a plaintiff who alleges that their employer
engaged in a discriminatory or unfair employment practice to file a
civil action against the employer in the district court after
exhausting administrative remedies. § 24-34-306(14), C.R.S. 2025.

¶ 22 Section 24-34-402(1) of CADA describes what constitutes a
"discriminatory or . . . unfair employment practice." Under
subsection (1)(a)(I), it is a discriminatory or unfair employment
practice for an employer to "discriminate in matters of
compensation . . . because of . . . sex, sexual orientation, gender
identity, [or] gender expression." § 24-34-402(1)(a)(I). And under

9

subsection (1)(i), it is a discriminatory or unfair employment practice for an employer to "discharge, discipline, discriminate against, coerce, intimidate, threaten, or interfere with any employee or other person because the employee inquired about, disclosed, compared, or otherwise discussed the employee's wages." § 24-34-402(1)(i).

¶ 23    Like the EPEWA, the relevant statutory language of CADA is unambiguous.  CADA states that retaliating against an employee for inquiring about, discussing, or disclosing the employee's wages is a discriminatory and unfair employment practice.  § 24-34-402(1)(i). This subsection likewise contains no language tying the retaliation to discrimination based on gender (or any other protected class). Thus, we conclude that the district court erred by dismissing Verheggen's CADA claim for not alleging facts pertaining to gender discrimination.

C.    Statutory Purpose, Redundancy, and Breadth

¶ 24    We aren't persuaded otherwise by the defendants' arguments that (1) the EPEWA and CADA were enacted to deter gender discrimination; (2) our interpretation renders the statutes

redundant; and (3) our interpretation could open the door to a multitude of retaliation claims.

¶ 25 First, our interpretation is consistent with the anti-discrimination purpose of the EPEWA and CADA. Open discussion among employees about wage rates — regardless of whether those discussions pertain to gender-based pay disparities and regardless of whether any gender-based discrimination occurred — promotes wage transparency and helps uncover discriminatory wage practices. The statutes' prohibitions on retaliating against employees for inquiring about or discussing their wages furthers that purpose.

¶ 26 Second, while the EPEWA and CADA both provide employees with a claim for retaliatory conduct by the employer, the statutes aren't redundant because the available remedies, though overlapping, are not the same. *Compare* § 8-5-104 (remedies under the EPEWA may include reinstatement; promotion; pay increase; payment of lost wage rates; liquidated damages; and the employee's reasonable costs, including attorney fees), *with* § 24-34-405, C.R.S. 2025 (remedies under CADA may include reinstatement or hiring of the employee with or without back pay, front pay, and

compensatory and punitive damages).[4] We also reject the defendants' argument that the EPEWA and CADA are redundant of the Colorado Wage Claim Act (CWCA), §§ 8-4-101 to -126, C.R.S. 2025. The CWCA also addresses wage-related conduct, but it expressly excludes "the state or its agencies or entities; counties; cities and counties; municipal corporations; [and] quasi-municipal corporations" from the definition of "employer." § 8-4-101(6). Thus, the EPEWA and CADA reach employers that the CWCA excludes. *See* § 8-5-101(5), C.R.S. 2025 (defining "[e]mployer" under the EPEWA to include the state and any of its political subdivisions); § 24-34-401(3), C.R.S. 2025 (defining "[e]mployer" under CADA to include the state and any of its political subdivisions).

¶ 27    Third, we acknowledge that the conduct protected by the EPEWA and CADA — "inquir[ing] about, disclos[ing], compar[ing], or otherwise discuss[ing]" the employee's wages, §§ 8-5-102(2)(d), 24-34-402(1)(i) — is broad, which could result in a claim being brought against an employer simply because an adverse

---

[4] We also note that the district court's interpretation — which the defendants urge us to adopt — doesn't resolve any arguable redundancy between section 8-5-102(2)(d), C.R.S. 2025, and section 24-34-402(1)(i), C.R.S. 2025.

12

employment action happened to fall close in time to a breakroom discussion among employees about their wages. But just because a claim can be *brought* does not mean it can be *proved*. And in any event, we cannot add limitations to a statute that aren't there. *See Oakwood Holdings, LLC v. Mortg. Invs. Enters., LLC*, 2018 CO 12, ¶ 12 ("[W]e do not add words to the statute or subtract words from it."). It is for the legislature to enact additional guardrails or requirements if it sees fit to do so. *Dep't of Transp. v. City of Idaho Springs*, 192 P.3d 490, 494 (Colo. App. 2008) ("If a statute gives rise to undesirable results, the legislature must determine the remedy. Courts may not rewrite statutes to improve them." (citation omitted)).

## IV. Alternative Grounds to Affirm

¶ 28 Our inquiry doesn't end there, however, because the defendants argue that, even if the EPEWA and CADA contemplate a retaliation claim in the absence of gender discrimination, Verheggen nevertheless failed to state a claim against some or all of the defendants.

¶ 29 For a retaliation claim to survive a motion to dismiss, a plaintiff must plausibly allege that (1) they engaged in activity

protected by the applicable statute; (2) they suffered an adverse employment action after or at the same time as the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action. *Cf. Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (analyzing a Federal Fair Labor Standards Act (FLSA) retaliation claim by applying the same elements in an employment action alleging retaliation); *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (noting similar elements for an employee to state a plausible claim of Title VII retaliation); *see People v. Davis*, 2012 COA 56, ¶ 29 (we may rely on federal cases interpreting federal law that is similar to Colorado law).

¶ 30   The defendants argue that (1) Daggett and Burbidge aren't "employers" within the meaning of the EPEWA; (2) Verheggen didn't engage in protected activity; and (3) Verheggen didn't plausibly allege a link between any protected activity and the adverse employment action. We agree with the first contention as it relates to Daggett and Burbridge and reject the other two contentions.

## A.    Employers

¶ 31    The defendants assert that Verheggen didn't plausibly allege that Daggett and Burbidge are "employers" within the meaning of the EPEWA.  We agree.

¶ 32    The EPEWA defines "[e]mployer" as "the state or any political subdivision, commission[, or] department . . . thereof, and every other person employing a person in the state."  § 8-5-101(5).  During the relevant time, Daggett was the deputy director of the ACDHS, and Burbidge was an intake manager at the ACDHS, as well as Verheggen's immediate supervisor.  In other words, Daggett and Burbidge — like Verheggen — were ACDHS employees.

¶ 33    In an effort to bring Daggett and Burbidge under the "employer" umbrella, Verheggen asserted in her complaint that the definition of "employer" includes not only "the company for which an employee works, but also any person acting on behalf of that company who exercises 'operational control.'"  And, relying on cases interpreting the FLSA, she argued that a person may exercise operational control — and thus be an "employer" — if they (1) have hiring and firing power; (2) supervise and control the employee's work; (3) determine wage rates and methods of payment; and

(4) maintain employee records.  *See, e.g., Inniss v. Rocky Mountain Inventory, Inc.*, 385 F. Supp. 3d 1165, 1167-68 (D. Colo. 2019); *Robertson v. Bd. of Cnty. Comm'rs*, 78 F. Supp. 2d 1142, 1151 (D. Colo. 1999).

¶ 34    Assuming, without deciding, that the notion of operational control applies to the EPEWA's definition of "employer," Verheggen's complaint still doesn't plausibly allege sufficient facts to infer that Daggett and Burbidge had such control.  Her only allegation is that these "defendants, jointly, had the power to hire and fire [ACDHS] employees, supervised and controlled the work of [ACDHS] employees, determined wage rates and methods of pay for [ACDHS] employees, and maintained employment records for [ACDHS] employees."  This is nothing more than a "threadbare recital" of the elements of operational control, which is insufficient to plausibly

allege that Daggett and Burbidge are employers for purposes of the EPEWA.  *Inniss*, 385 F. Supp. 3d at 1168 (citation omitted).[5]

¶ 35    Accordingly, we affirm the district court's dismissal of the EPEWA claim as to Daggett and Burbidge.

### B.    Protected Activity and Causal Link

¶ 36    The defendants next assert that Verheggen didn't plausibly allege a causal link between any protected activity and the suspension.  Specifically, they argue that (1) any protected activity was temporally distant from the suspension, and (2) the activities

---

[5] In *Inniss v. Rocky Mountain Inventory, Inc.*, 385 F. Supp. 3d 1165, (D. Colo. 2019), the plaintiff brought a wage claim against both the company that employed him and the company's owners.  In denying a motion to dismiss, the court noted that the plaintiff's "threadbare recital" of the operational control elements was insufficient alone to state a plausible claim that the owners were also "employers."  *Id.* at 1168 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  However, the plaintiff also alleged that (1) the company was a closely-held corporation controlled solely by the owners, suggesting that the owners alone had the power to hire, fire, and set wage rates; (2) the owners frequently "castigated" the plaintiff regarding mileage reports; and (3) he complained to each of the owners about pay discrepancies, suggesting authority to supervise and maintain employment records.  *Id.* at 1168-69.  These additional allegations "nudge[d] [the plaintiff's claim] across the line from conceivable to plausible."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

closer in time to the suspension (the demand letter and complaint) weren't protected activity. We disagree.

¶ 37 We conclude that the district court erred to the extent it concluded that the demand letter wasn't protected activity. Recall that both the EPEWA and CADA protect "inquir[ing] about, disclos[ing], compar[ing], or otherwise discuss[ing]" the employee's wages. §§ 8-5-102(2)(d); 24-34-402(1)(i). This definition is broad. The demand letter explains Verheggen's historical hourly schedule; discusses how Verheggen was paid (i.e., for "only [forty] hours per week"); and discusses the number of hours she alleges were uncompensated and the wages she alleges she is owed for working those hours. In other words, the letter "otherwise discusses" her wages. Thus, it qualifies as protected activity.

¶ 38 We need not decide whether the complaint is protected activity because even if it isn't, we conclude that Verheggen plausibly alleged a link between other protected activity and the suspension. *See Patterson v. James*, 2018 COA 173, ¶ 23. In so doing, we reject the defendants' assertion that the demand letter (and the earlier protected activity) is too remote in time to the suspension for the court to infer a causal link.

¶ 39　Verheggen's complaint alleges that she made numerous inquiries about her wages over the course of approximately twenty years.  We cannot, as the defendants seem to suggest, simply discount the earlier inquiries or consider them in isolation.  Viewing Verheggen's complaint in the light most favorable to her, as we must, *see Norton*, ¶ 7, the claims allege an escalating pattern of Verheggen inquiring about or expressing dissatisfaction with her wages, eventually culminating in her sending the demand letter in December 2022 (approximately six months before the suspension).

¶ 40　In support of their argument that the demand letter was too remote in time, the defendants cite cases discussing when timing *alone* is insufficient to plausibly allege a causal link.  *See, e.g., Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1230-32 (10th Cir. 2004).  However, Verheggen's complaint contains other allegations to support her claim that the suspension was retaliatory.  She alleged that the statements in the suspension were false; that she had never witnessed another employee treated so harshly for comparable (alleged) conduct; and that the defendants hadn't followed any of the ACDHS's standard disciplinary procedures before issuing the suspension.

¶ 41   We acknowledge that this case presents a close call; the allegations in Verheggen's complaint could have been more robust. But at this stage of the proceedings, we must draw every reasonable inference in Verheggen's favor.  *See Edge Telecom, Inc. v. Sterling Bank,* 143 P.3d 1155, 1160 (Colo. App. 2006).  Looking through that lens, we conclude that the facts alleged by Verheggen give rise to a plausible inference that the ACDHS and McDougal (as its director) violated the EPEWA and (as to the ACDHS only) CADA by retaliating against her for discussing her wages.

## V.   Disposition

¶ 42   The judgment is affirmed in part and reversed in part, and the case is remanded to the district court for proceedings consistent with this opinion.

JUDGE WELLING and JUDGE SCHOCK concur.